348 So.2d 1149 (1977)
INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellee,
v.
AVIS RENT-A-CAR SYSTEM, INC., Defendants-Appellants.
No. 49795.
Supreme Court of Florida.
May 12, 1977.
Rehearing Denied July 29, 1977.
*1150 John G. Poole, Jr. of the Law Offices of Charles C. Papy, Jr., Coral Gables, and Jeanne Heyward, Miami, for plaintiff/appellee.
James E. Tribble, of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for defendants/appellants.
ENGLAND, Justice.
Pursuant to Florida Appellate Rule 4.61, the United States Court of Appeals for the Fifth Circuit, has certified to us a question of law concerning indemnification as between insurance companies for the financial loss resulting from the negligent operation of a rented motor vehicle. This case arose after two insurance carriers, Liberty Mutual Insurance Company, for Avis Rent-A-Car System, Inc., and Insurance Company of North America (INA), for the lessee, had settled for $350,000 the liability of their insureds to the estate of an individual who had been killed as a result of the negligent operation of a vehicle owned by Avis. This lawsuit began in the United States District Court for the Southern District of Florida, where Avis' carrier was found to be responsible for the full $350,000 payment under applicable Florida law. On appeal the Court of Appeals certified to us the following relevant facts (some of which were stipulated) and question:
"`On June 27, 1969, AVIS ... leased a 1969 Chevrolet Station Wagon owned by AVIS to Camp Ocala, Inc... . On July 26, 1969, during the time of the lease, ... [the] Wagon *1151 was being operated by one Jane C. Spitzer with the consent and permission of Camp Ocala, Inc. Jane C. Spitzer was an employee of Camp Ocala, Inc., and was operating the ... Wagon within the course and scope of her employment with Camp Ocala, Inc.
`On July 26, 1969, Jane C. Spitzer . . collided with another vehicle resulting in serious personal injury to Martha L. Rubenstein, a minor, who was riding as a passenger in the Chevrolet Station Wagon being operated by Jane C. Spitzer. Martha Rubenstein was a camper at Camp Ocala, Inc.
`Subsequently, Martha L. Rubenstein and her father, Arthur Rubenstein, brought suit ... against Camp Ocala, Inc., and AVIS... .
`At the time of the accident, the Defendant LIBERTY MUTUAL ... insured AVIS under a liability insurance policy... . [INA] insured Camp Ocala, Inc., under a liability insurance policy... .
`LIBERTY MUTUAL defended both AVIS and Camp Ocala. .. .
`Just prior to the Rubenstein case coming to trial, a settlement of that action was reached for the sum of $350,000.00. The settlement sum was agreed to by both LIBERTY MUTUAL and INA without prejudice to either company litigating their respective rights under the policies at a later time... .'
LIBERTY MUTUAL and INA contributed to the $350,000.00 Rubenstein settlement as follows:

 LIBERTY MUTUAL paid the first $100,000.00 $100,000.00
 INA paid the next $200,000.00 200,000.00
 LIBERTY MUTUAL paid the next $50,000.00 50,000.00
 ___________
 $350,000.00

`INA in the present action now seeks to recover back the $200,000.00... .'
AVIS is provided with general bodily injury liability coverage in the amounts of $500,000/$1,000,000. By way of endorsement to said policy, any rentee is provided with reduced limits of liability protection to coincide with the specific terms of the standard rental agreement. These limits are $100,000/$300,000.
On the basis of these facts, the [trial] Court framed the issue as follows:
`Would AVIS (and hence its insurer, LIBERTY MUTUAL) have been entitled to maintain an action for indemnity against Camp Ocala (and hence its insurer, INA) for all sums which AVIS would have been liable to pay to the Rubensteins, in excess of $100,000.00?'
In answering this question in the negative, the [trial] Court viewed Florida law as establishing the principle that the carrier for the owner is primarily liable and has no right of indemnification from the driver of the vehicle or its carrier. The Court based this view on Roth v. Old Republic Insurance Co., 269 So.2d 3 (Fla. 1972), which, the [trial] Court believed, had derogated the authority of the line of Florida cases which this Court had relied on in Hertz Corporation v. Ralph M. Parsons Co., 419 F.2d 783 (5th Cir.1969)."
At the outset we are urged by Avis to rephrase the question certified to us, but we do not find that essential to our determinations as to the right of indemnification or the legal limitations on Avis' attempt to restrict its tort liability. We would answer the question posed in the affirmative, with the obvious limitation that Avis could not recover from Camp Ocala's insurer more than the policy limit set in the contract between Camp Ocala and INA. Our reasons follow.
In Hertz Corp. v. Ralph M. Parsons Co., 419 F.2d 783 (5th Cir.1969), the court applied Florida law to hold that the lessor-owner of a motor vehicle may obtain indemnification from a lessee who employed the negligent driver,[1] on the ground that the vicarious liability of the employer is primary, *1152 and that of the owner secondary, for damages in excess of the insurance protection afforded the lessee-driver by the terms of the parties' rental contract.[2] The financial effect of that decision was to charge to the lessor-owner's carrier the full amount due as a result of a driver's negligence up to the limit of the policy provided the driver in the rental contract, and to charge all in excess of that limit to the negligent lessee's carrier (the carrier for the negligent driver's employer) up to the policy limits of the lessee's insurance contract. Presumably, although the point is not discussed in the Hertz case, any amount paid by the lessor-owner's carrier which is not indemnified by the driver's (or his employer's) carrier could be collected from the driver (or his employer) personally.
Hertz, it will be noted, involved multiple layers of insurance for a driver's negligence, just as were available in this case. One layer is provided under the rental agreement to the lessee from the owner's carrier ($300,000 in the Hertz case and $100,000 here); another layer is provided to the lessee-employer from its own carrier (an unstated amount above $25,000 in the Hertz case and $200,000 here); a third layer is provided to the owner from its carrier ($950,000 in the Hertz case and $500,000 here); and a fourth layer is provided to the individual driver from his or her carrier ($20,000 in the Hertz case and an unknown or nonexistent amount here[3]).
Roth v. Old Republic Insurance Co., 269 So.2d 3 (Fla. 1972), involved an indemnification claim between insurance carriers similar to the one now before us. This Court there held that insurance provided to the lessee as a part of the rental agreement with the owner places primary financial responsibility on the owner's carrier and bars indemnification from the negligent driver to that extent. The feature of Roth which distinguished it from prior cases saying the same thing[4] was the fact that the negligent driver in Roth was not the lessee and under the rental agreement had no permission from the owner to operate the vehicle. The decision in Roth is simply a re-affirmation of the principal that, because of our financial responsibility law and without regard to the procedural posture of the lawsuit,[5] the owner's carrier is liable for the damages caused by the vehicle in the course of its intended use, in accordance with the agreement to insure made a part of the rental contract, no matter who happens to be driving the vehicle.[6]
Roth, it will be noted, did not involve multiple layers of insurance coverage. The insurance coverage provided to the lessee by the owner's carrier as part of the car rental contract was apparently greater than the loss for which the owner was held responsible.[7]
Against this background we turn to the contentions of the parties in this case. Liberty Mutual argues that the financial responsibility laws of the state[8] were designed *1153 to protect members of the public from losses resulting from the ownership and operation of motor vehicles, up to specified minimum amounts per person and per accident. It contends that the policy which it sold to Avis, providing for primary coverage for a lessee's negligence up to $100,000 per person and for alternate or overlapping coverage for Avis's negligence up to $500,000 per person, protected the public well beyond the minimum limits of the statute. Liberty Mutual argues that, since it would be responsible to the full extent of $500,000 per person for Avis' negligence or for Avis' responsibility under the dangerous instrumentality doctrine for the negligent operation of a rented vehicle, more than adequate protection is provided to the public. It contends that its indemnification rights for payments in excess of coverage furnished to lessees in no way derogates the public policy served by the statute, so that a $100,000 primary coverage for lessees (or any other amount not less than statutory minimums) is and ought to be contractually permissible. In other words, Liberty Mutual suggests that nothing in Roth or any other Florida precedent bars its right to obtain indemnification from the negligent driver of a motor vehicle or the driver's employer (or their insurers) to the extent of amounts paid out in excess of the primary $100,000 coverage furnished by the express terms of the rental contract,[9] since that business arrangement in no way affects either the statutes or common law of this state. In essence Liberty Mutual argues for freedom of contract between lessors and lessees of motor vehicles, so long as the public policy of the state with respect to financial protection from motor vehicle mishaps is not impugned. In this vein Liberty Mutual contends that the Roth case, which did not involve multiple layers of coverage, has no bearing on this case at all.
INA contends that Roth directly applies here in two major respects. First, INA contends that Roth stands for the proposition that rental fees paid to a car rental company pass on the cost of the insurance provided to the owner, so that the lessee is to be viewed as indirectly paying for the coverage provided by the owner's insurer. That being so, INA argues, it is unfair for Avis' customers to pay indirectly for $500,000 of insurance which benefits only Avis, and Avis should be prohibited as a matter of law from providing an insurance contract which does not give coverage to lessees which is co-extensive with the policy limits it obtains for itself.[10] INA also contends that Roth, coupled with Susco Car Rental System of Florida v. Leonard[11] and the statute, have abolished the former right of indemnification available to an owner against a negligent driver.
In our view, the financial responsibility law is only relevant to situations such as this insofar as it is necessary to protect the public from uncompensated losses arising from the use of motor vehicles. To this end the law requires motor vehicle owners to provide liability insurance coverage for the operation of their motor vehicles on the highways of this state. Independent of this insurance requirement is the common law obligation of vehicle owners under the dangerous instrumentality doctrine. But neither of these financial responsibility principles bear on the allocation of risk between owners and operators in excess of minimum statutory coverage, or on the right of indemnification which derives from the common law principle that fault attracts primary responsibility.
*1154 We see nothing in the statute or in the public policy of the state which would require the purchase of co-extensive coverage for lessees (or other operators) and their lessors, or which would prohibit an owner from insuring only itself against economic loss in excess of statutory minimums and the amounts available to others. The underlying policy of the statute is satisfied once the law's minimum financial protection is provided to injured members of the public. Neither this statute nor the dangerous instrumentality doctrine asserts any interest of the state with respect to the allocation of risk among commercial enterprises or the responsibility of commercial enterprises to furnish more than minimal statutory coverage to their customers.[12]
We hold that the public policy of the state was satisfied in this case when the injured's beneficiaries were compensated by the vehicle's owner for the negligent operation of a rented vehicle.[13] The parties were free to contract between themselves to shift the burden of loss so long as they met the requirements of law, and in this case there is no suggestion that those requirements were not met.
With the public policy questions resolved, we turn to the contracts of insurance on which indemnification is sought and refused. The terms of the policy written by Liberty Mutual to Avis clearly provide that $100,000 is to be the per person primary coverage, but that a $500,000 per person limit was available to Avis for its negligence or its responsibility as owner in the event any lessee did not carry adequate insurance of its own to compensate for the negligent operation of the vehicle. INA's policy clearly provided that it was not to be responsible for any primary coverage made available from a rental car company, which in this case meant that INA was relieved of responsibility for the first $100,000 of damages caused by its negligent insured. The provisions in these policies mesh perfectly to require payment from the respective companies in precisely the proportions on which they agreed in settling their respective liabilities for the first $300,000 of damages caused by the accident.
Going beyond INA's liability to that of Camp Ocala, we hold that nothing in the present financial responsibility statute or in the common law of this state would bar Liberty Mutual from bringing suit for indemnification against the negligent driver or the lessee of the car, or their carriers, for the $50,000 it was obliged to pay after the lessee's insurance had been exhausted.[14] Neither Roth nor Susco dictates that the owner of an automobile may not be indemnified by the negligent operator or lessee of a vehicle for liability beyond the contract insurance provided to the lessee, so long as the contract provides at least the statutory minimum of coverage. Although Avis and Liberty Mutual are prohibited from seeking indemnification for the first $100,000 of insurance provided through the rental agreement,[15] the public policy which bars indemnification to that extent has no effect on the traditional tort doctrine of indemnification by the wrongdoer.
The question certified by the United States Circuit Court of Appeals is answered in the affirmative, with the obvious clarification that INA cannot be liable for sums in excess of the limits set in its contract with Camp Ocala. The case is returned to that court for further disposition of the appeal in accordance with this advice.
It is so ordered.
*1155 OVERTON, C.J., and BOYD, SUNDBERG and HATCHETT, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] The lessee in Hertz was the corporate employer of the driver. Liability arose by application of the doctrine of respondeat superior. The same situation pertains in the present case since Spitzer was an employee of Camp Ocala driving in the course of her employment.
[2] Camp Ocala paid a separate insurance premium for its coverage limit, and the terms of Liberty Mutual's primary coverage appeared on a typed attachment to its standard policy.
[3] The question of Spitzer's personal liability, or that of her insurer, has not been raised before us. In Hertz, the driver-employee's insurance company paid its full policy amount to Hertz as indemnification.
[4] See Morse Auto Rentals, Inc. v. Lewis, 161 So.2d 235 (Fla.3d DCA 1964).
[5] At least one of the three dissenting justices considered the procedural difference between Roth and Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959), to be a bar to the Court's authority to review the district court's Roth decision.
[6] This point had already been established in the Susco case.
[7] This conclusion is discerned from the district court decision which the Court in Roth reviewed. See Roth v. Cannel, 242 So.2d 491, 492-93 (Fla.3d DCA 1970).
[8] § 324.151(1)(a), Fla. Stat. (1975) provides:

"An owner's liability insurance policy shall ... insure the owner named therein and any other person as operator using such motor vehicle or motor vehicles with the express or implied permission of such owner, against loss from the liability imposed by law for damage arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles ... subject to [statutory] limits... ."
[9] Liberty Mutual states that, in the event it prevails in this lawsuit, it will have a right of indemnification against the negligent driver of the motor vehicle, her carrier or her employer, to the extent of $50,000, the excess over its responsibility for $100,000 of primary coverage and the amount paid by INA under its excess insurance contract with Camp Ocala.
[10] INA argues that the financial responsibility law requires co-extensive coverage since Section 324.151(1)(a) directs that "a policy" shall cover both an owner and operator. The suggestion is made that the lack of any reference to an allocation between carriers is ambiguous and that the ambiguity should be resolved in a manner consistent with the highest possible protection to the public.
[11] 112 So.2d 832 (Fla. 1959).
[12] INA suggests that standard rental agreements sold by rental car companies mislead the public and constitute adhesion contracts to be strictly construed against the companies. These issues have not been certified to us for decision by the United States Circuit Court of Appeals. Whether they have been or could be properly made issues in this lawsuit are questions for that court to determine.
[13] See the dissent of Mr. Justice Dekle in Roth, 269 So.2d at 7.
[14] Had Camp Ocala insured to a higher limit with INA there would be no need for Avis to seek indemnification. Similarly, had Camp Ocala carried less than the $200,000 per person limitation its exposure to liability would have been correspondingly greater.
[15] See Morse Auto Rentals, Inc. v. Lewis, 161 So.2d 235 (Fla.3d DCA 1964).