The TRAVELERS INDEMNITY CO., a Connecticut corporation, as Subrogee for Pensacola Buggy Works, Inc., Plaintiff-Appellee,

v.

Franna M. SWANSON, formerly known as Frauna M. Baars, Defendant-Appellant,

State Farm Mutual Automobile Insurance Co., a corporation, Defendant.

No. 77–3314.

United States Court of Appeals, Fifth Circuit.

Sept. 28, 1981.

John P. Welch, J. McHenry Jones, Pensacola, Fla., for defendant-appellant.

William D. Marsh, A. G. Condon, Jr., Pensacola, Fla., for defendant-appellant.

Joe J. Harrell, Pensacola, Fla., for State Farm.

Before JONES, BROWN and RUBIN, Circuit Judges.

JONES, Circuit Judge:

This is a diversity action arising in Florida. Under a lease agreement dated April 10, 1972, First Oklahoma Corporation leased an automobile to Mrs. Mary F. Baars. The lease provided, *inter alia*, that First Oklahoma agreed:

> D. To furnish replacements, at no extra charge, for any vehicles . . . which temporarily may be out of service . . . such substitute vehicles, while in the service of lessee, shall be subject to all terms and conditions of this agreement.

Mrs. Baars returned the leased automobile to First Oklahoma for repairs. As required by the lease First Oklahoma furnished her with a replacement vehicle. Mrs. Baars was then unaware that the replacement vehicle was owned, not by First Oklahoma, but by Pensacola Buggy Works, Inc. On November 3, 1973, Mrs. Baars permitted her granddaughter, Mrs. Frauna M. Swanson, to drive the replacement vehicle. The automobile driven by Mrs. Swanson collided with a motorcycle ridden by Mr. Charles L. Tolbert.

Mrs. Swanson was the named insured in an automobile liability policy issued by State Farm Mutual Automobile Insurance Company providing limits of liability coverage of $100,000/$300,000 for bodily injury. Travelers was the insurer for both First Oklahoma and Buggy Works. Acting under their policy with Buggy Works, a Travelers' representative, Jack A. Marchant, conducted an investigation of the accident with the cooperation of Mrs. Swanson. State Farm was not asked to participate in the investigation. Marchant wrote Mrs. Swanson that he would be handling the claim and that litigation was a possibility. Mrs. Swanson was led to believe that Travelers would be representing her interests.

Tolbert and his wife brought a state court action on August 7, 1974, and named only Buggy Works and Travelers as defendants. Thereafter, Travelers' attorney stipulated to the joinder of Mrs. Swanson as a party defendant without her knowledge or consent. Mrs. Swanson was not informed that in the event of an adverse decision Travelers could or would seek indemnification from her, nor was she advised that she could or should employ independent counsel. Five days before the trial date, Travelers having just then "discovered" that its policy afforded Mrs. Swanson no protection,[1] tendered the defense of the action to State Farm. State Farm refused to accept responsibility for the defense at such a late date. The trial, with only attorneys retained by Travelers participating for the defense, resulted in a verdict and a judgment against all defendants in the amount of $181,475. Travelers, without consulting appellants beforehand, paid the judgment nine days after its entry, and now brings this action against Mrs. Swanson and State Farm for indemnification.

Travelers alleged in its complaint that it paid the state court judgment on behalf of its insured, Buggy Works, and that it was entitled to indemnification from Mrs. Swanson and State Farm. Motions to dismiss were filed. The district court later entered an order stating that the motions would be treated as motions for summary judgment. Mrs. Swanson answered the complaint and filed a cross-claim against State Farm. Both State Farm and Mrs. Swanson filed motions for leaves to file counterclaims. Mrs. Swanson filed a motion for leave to file a third party complaint against First Oklahoma. The district court entered summary judgment in favor of Travelers and against defendants Mrs. Swanson and State Farm on Travelers' claim for indemnification; denied the motions of the defendants for leave to file counterclaims; denied the motion of Mrs. Swanson for leave to file a third party complaint; and reserved judgment on the cross-claim.

---

1. Travelers only now concedes that its policy coverage did extend to Mrs. Swanson, at least to the extent of $10,000. *See* Part I *infra.*

In granting summary judgment in favor of Travelers, the district court held as matters of law: (1) that Travelers was entitled to indemnification from Mrs. Swanson and her insurer, State Farm, for the amount it paid in satisfaction of the state court judgment in excess of the coverage afforded Mrs. Swanson under Travelers' policy with Buggy Works, and (2) that because Mrs. Swanson and State Farm had not demonstrated any prejudice to them resulting from Travelers' actions, Travelers was not estopped from seeking such indemnification. We discuss these holdings in turn.

## I. Indemnification

■ The district court noted that both the Travelers policy insuring Buggy Works and the State Farm policy insuring Mrs. Swanson contained escape clauses attempting to avoid liability if there were any other applicable coverage. The court followed the holding in *World Rent-A-Car, Inc. v. Stauffer*, 306 So.2d 131 (Fla.App.1974), *cert. denied*, 321 So.2d 557 (Fla.1975), which held that "mutually noncovering escape clauses [are] repugnant and nugatory. Coverage [is] afforded fully under both policies." *Id.* at 133. Upon examination of the two policies, the district court held that the Travelers' policy insuring Buggy Works was primary but that it afforded coverage of only $10,000 because of a Garage Customer Endorsement. That finding is not questioned on appeal.

The district court then held that, under the decision in *Insurance Company of North America v. Avis Rent-A-Car System, Inc.*, 348 So.2d 1149 (Fla.1977), Travelers could seek indemnification for the excess it paid over $10,000 from State Farm and Mrs. Swanson. The latter rely upon the doctrine that an insurer can not sue its own insured. The doctrine is inapplicable to the facts of this case. In the *Avis* case, Avis leased an automobile to Camp Ocala. An employee of Camp Ocala was driving the car when the accident occurred. The insurer of Avis, which had a $100,000 liability limit, contributed $150,000 and the insurer of Camp Ocala, which had a $200,000 limit, contributed $200,000 to a $350,000 settlement and then brought suit to determine their respective rights. The Supreme Court of Florida, reiterating its position that the owner's insurer had primary liability, held that the owner's insurer was liable for the first $100,000, that the insurer of Camp Ocala was secondarily liable to the limits of its policy, or $200,000, and that Avis' insurer could seek indemnification for the excess it paid over its limits, or $50,000, from the negligent employee/driver and her insurance carrier. Thus, it follows that Travelers is entitled to indemnification from Mrs. Swanson and State Farm for the excess it paid over $10,000, unless Travelers is estopped from asserting such a claim under the circumstances of this case..

## II. Estoppel

■ Generally speaking, the elements of estoppel in Florida are:

(1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party; (2) a reliance upon this representation by the party claiming the estoppel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon.

*Davis v. Evans*, 132 So.2d 476, 481 (Fla. App.), *cert. denied*, 136 So.2d 348 (Fla.1961). Of course, because estoppel is equitable in nature, it "depends upon the facts and circumstances of each case." *Dokken v. Minnesota-Ohio Oil Corp.*, 232 So.2d 200, 203 (Fla.App.), *cert. denied*, 240 So.2d 638 (Fla. 1970). Moreover, the "law is well-settled that a party is estopped from asserting legal rights to the detriment of another party when to do so would be unconscionable." *Rubenstein v. Richard Fidlin Corp.*, 346 So.2d 89, 91 (Fla.App.1977).

Appellants' essential claim is that they relied to their detriment on Travelers' representations that Travelers would be representing Mrs. Swanson's interests (and through hers, State Farm's) with regard to the action brought against Mrs. Swanson by the Tolberts. There is no dispute that such representations were made.

■ Furthermore, when the party sought to be estopped has a duty to speak, but fails to, such silence can be a "representation" relied upon by the party seeking estoppel. *Pasco County v. Tampa Development Corp.*, 364 So.2d 850, 853 (Fla.App.1978); *Davis v. Evans*, 132 So.2d at 481. In this regard, appellants allege that Travelers failed to inform Mrs. Swanson: (1) that in the event of an adverse decision, Travelers could or would seek indemnification; (2) that Mrs. Swanson could or should employ independent counsel; (3) that five days before trial, Travelers concluded that its policy provided *no coverage* for Mrs. Swanson; (4) that Mrs. Swanson could or might wish to appeal; and (5) that Travelers intended to satisfy, and did satisfy only nine days after its entry, the judgment against Mrs. Swanson in full, thereby effectively denying her the right of appeal.

In deciding whether Travelers was under a duty to speak with regard to these matters, we are guided by the recent statement of the Supreme Court of Florida on an insurer's duties in handling the defense of claims against its insured:

> An insurer ... has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. *Auto Mutual Indemnity Co. v. Shaw*, 134 Fla. 815, 184 So. 852 (1938). For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. *Liberty Mutual Insurance Co. v. Davis*, 412 F.2d 475 (5th Cir. 1969). This good faith duty obligates the insurer to advise the insured of settlement opportunities,

to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. *Ging v. American Liberty Insurance Co.*, 423 F.2d 115 (5th Cir. 1970).

*Boston Old Colony Insurance Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981). Recognizing the strict duties thus placed on insurers, we hold that Travelers, whether viewed as Mrs. Swanson's insurer (their original position in this litigation and now acquiesced in on appeal) or as her claimed legal representative (which Travelers always remained as far as Mrs. Swanson was concerned due to its failure to advise her otherwise), was under a duty in each and every instance listed above to communicate with Mrs. Swanson. Therefore, Travelers' failure to do so constituted "representations" upon which Mrs. Swanson and State Farm could rely.

The second element of estoppel, actual reliance on the representations, is alleged by appellants and not disputed by Travelers; it thus is present as a matter of law.

■ The third element of estoppel, actual prejudice resulting from this reliance, is the one most strenuously contested on appeal. The district court, citing *Phoenix Assurance Co. of New York v. Hendry Corp.*, 267 So.2d 92 (Fla.App.1972), *cert. dismissed*, 277 So.2d 532 (Fla.1973), held that Mrs. Swanson and State Farm failed to "establish prejudice ... as a matter of law." Our review of the record convinces us, however, that not only was the district court's reliance on *Phoenix Assurance* misplaced, but that Mrs. Swanson and her insurer, State Farm, were in fact prejudiced by their reliance on Travelers' representations, and, therefore, were themselves entitled to summary judgment.[2]

---

**2.** Normally questions of estoppel, including prejudice, depend upon inferences to be drawn from known facts about which reasonable men could readily differ, and are therefore appropriate for submission to a jury. *See I. S. Joseph, Inc. v. Citrus Feed Co.*, 490 F.2d 185 (5th Cir. 1974); *James Talcott, Inc. v. Carder*, 300 F.2d

654 (5th Cir. 1962). The trial court's conclusion was not a finding of fact, to be upheld unless clearly erroneous, Rule 52(a), Fed.R. Civ.P., but a conclusion of law from undisputed facts. We believe there is only one reasonable inference that can be drawn with respect to

In *Phoenix Assurance,* the insurer's policy with the insured excluded liability for loss not discovered within sixty days of a specified event. The insured submitted a claim for a loss reported nineteen months after the specified event. After handling the claim for eleven months, the insurer denied coverage on the basis of the "60-day" clause. The insured then settled the claim and brought suit against the insurer for indemnification, claiming that the insurer was estopped from denying coverage. The trial court entered a directed verdict in favor of the insured. The District Court of Appeals, finding that the only evidence in the record tending to establish prejudice was the 11-month delay in disclaiming coverage, held that such a delay was "[in]sufficient *alone* to establish prejudice as a matter of law" and, therefore, reversed the granting of the directed verdict. *Phoenix Assurance,* 267 So.2d at 93–94 (emphasis added).

A different situation is presented here. In *Phoenix Assurance,* when the insurer concluded that its policy did not cover the loss, it immediately notified the insured of its decision and recommended that the insured obtain independent counsel. Trial was not imminent and the insured was able properly to conduct the defense of the claim. Here, by contrast, when Travelers concluded (five days before trial) that Mrs. Swanson was not covered by its policy, it did *not* notify her of their decision. *See Taylor v. Safeco Insurance Co.,* 361 So.2d 743, 745 (Fla.App.1978) ("To avoid any claim of estoppel, [citing *Phoenix Assurance* ], Safeco *notified* [its putative insured] that it undertook his defense reserving its claim of nonliability for any judgment.") (emphasis added). Nor did it give her any opportunity to defend herself or protect her interest. Instead, Travelers proceeded to trial allowing Mrs. Swanson to believe that it was representing her interests when, at least at that time, it in fact believed that it could not be held liable for any portion of any possible adverse judgment.

Even more important, and clearly establishing prejudice to both Mrs. Swanson and State Farm, were Travelers' acts and omissions following the entry of the adverse judgment. Instead of appealing the judgment or informing Mrs. Swanson that she could appeal, Travelers, without prior notification to either appellant, simply paid the judgment, thereby in effect depriving appellants here of their right to appeal the state court judgment against Mrs. Swanson. This denial of a legal right was sufficient to establish prejudice as to both Mrs. Swanson and State Farm, even though the exact value of this right might not be ascertainable.

Therefore, since we find all three elements of estoppel present, we hold that Travelers was estopped from seeking indemnification and that summary judgment should have been entered for appellants, Mrs. Swanson and State Farm. Because of our resolution of this issue, we need not decide the difficult issues of Florida law presented by appellants' proposed counterclaims and third party complaint.

The case is REVERSED and REMANDED with instructions to the district court to enter summary judgment in favor of appellants.

JOHN R. BROWN, Circuit Judge, specially concurring:

I concur fully in the Court's opinion, the holding that Travelers is estopped as a matter of law and the direction to enter judgment in favor of the forgotten, misled, unrepresented, misrepresented insured, Mrs. Swanson and her insurer State Farm.

Not only was this a complete abandonment of the Florida principles of due care owing by the insurer to the insured. Rather it was, not only for Travelers—who may now be thankful it is not a member of the Florida State Bar subject to disciplinary sanctions more stringent than verbal chastisement—but for the counsel [1] who, nomi-

---

prejudice, and therefore hold that appellants were entitled to summary judgment.

1. Counsel handling the federal court suit and this appeal were not Travelers' counsel in the state court proceeding.

nally, representing Mrs. Swanson, violated the fundamental canons of professional ethics owing by a lawyer to the client.

First, counsel forgot—or, worse, thought inconsequential—*who* was the client. Because Travelers had chosen them, could discharge them and would pay their fee, counsel considered and acted as though it was Travelers' interest alone which they need—and did very valiantly—champion with only a deferential genuflect to the nominal client. In the most solemn way—signature of pleadings, stature and appearance before the Florida Court, they were acting for the client, Mrs. Swanson. What they were saying is what they wanted the Court to believe was in her defense of the claims against her. But this was only on the surface. Underneath, her interests were all but forgotten.

Second, counsel breached their obligation of fidelity. It takes no words from accepted works to say that fidelity requires, at the very minimum, that the lawyer will take no action detrimental to the interest of the client, certainly not without adequate information and advice. And yet, within a few days of the trial, *her* lawyers—at least she could think so—agreed, without consultation, that she would voluntarily expose herself to the substantial risk of severe damages by a claim in a lawsuit to which she was not yet a party. Worse, this would set the stage for the indemnity action—successful below—to which she was not then exposed.

Third, and perhaps most important, counsel acted, not only with indifference to their client, Mrs. Swanson, but actually contrary to her interest. Without consultation, indeed without even the slightest advice that these horrible things had come to pass, they allowed the State Court judgment to be entered *and*, without appeal, allowed Travelers voluntarily to pay off the judgment in the secret belief that their client, Mrs. Swanson, and some other insurer, would have to reimburse Travelers—their *other* "client"—for the consequences that their and Travelers' connivance had brought about.[2]

Granted that the obligations of Travelers, insurer, is the less exacting standard of reasonable care, it must bear the consequences of the acts of those whom it deliberately chose and who were, as it well knew, under the compulsion of higher and exacting duties. Travelers cannot be surprised that the victory it achieved below flowing from actions masterminded by its counsel cannot withstand the principles of equitable estoppel. Nor can they.

---

2. That the Supreme Court of Florida in *North America v. Avis Rent-A-Car System, Inc.*, 348 So.2d 1149 (Florida 1977)—an opinion binding on me but still standing out as almost the lone exception to the firm principle that the insurer can never sue his insured—may have allowed recovery, does not exonerate counsel. Indeed, the presence of that precedent put on them the affirmative obligation as her counsel to advise Mrs. Swanson that while they were nominally acting for her, what they were really doing was seeking to obtain a judgment against her and any insurers that she might be able to find who might be able to pay off any judgments for counsel fees or expenses.