SMITH, Judge.
Appellants appeal orders of the trial court prorating the payment of a settlement negotiated between appellants and appellee Hertz Corporation, and the John-sons. The total settlement was $150,000, of which the trial court ordered appellants to pay $125,000 and Hertz to pay $25,000. Appellants contend Hertz should have been required to pay $100,000, based on liability insurance coverage provisions contained in *982 a truck rental agreement entered into between Hertz and appellant Carpet Transport, Inc. We agree and therefore reverse.
This case arose out of an accident involving motor vehicles driven by appellee Faye H. Johnson and appellant Crabtree. At the time of the accident, Crabtree was driving a tractor-trailer truck unit which was owned partly by Hertz (the tractor) and partly by appellee Carpet Transport, Inc. (the trailer). The tractor was being rented from Hertz by Carpet Transport, based on a form truck rental agreement written by Hertz and signed by Hertz and Carpet Transport. The Johnsons subsequently filed their complaint for damages against Hertz, Crabtree, and Carpet Transport. Hertz filed a cross-claim against appellants seeking indemnification and/or contribution in the event liability to the Johnsons was found. Prior to trial, the trial judge granted the Johnsons’ motion for partial summary judgment against all three defendants on the issue of liability.[1] Thereafter, the parties agreed on a settlement of $150,000 in the main suit, leaving Hertz’s cross-claim the only issue remaining for litigation. The trial judge resolved this issue by requiring the appellants Carpet Transport and Crabtree to share liability with Hertz for payment of the settlement on a proportionate basis, as follows: Based on the “policy limit” of $100,000 found in Hertz’s truck rental agreement with Carpet Transport and the policy limit of $500,000 found in Carpet Transport’s insurance policy covering the accident, the trial court ruled that Hertz was one/sixth liable and Carpet Transport and Crabtree were five/sixths liable for the settlement; that is, $25,000 and $125,000, respectively.
The sole issue in this case is whether the court correctly apportioned liability for payment of the agreed upon settlement with the Johnsons. The parties to this appeal agree that in order to apportion the damages it is necessary to consider the liability insurance coverage provided by Hertz (as self-insurer) to Carpet Transport and Crabtree under the truck rental agreement, and the insurance provided to Carpet Transport and Crabtree under their policy issued by National Union Fire Insurance Company. Of particular importance are the “primary” and “excess” coverage provisions of the rental agreement and the policy. Under the Hertz truck rental agreement, Hertz, as lessor, agreed to provide liability coverage for Carpet Transport, as well as any driver it authorized, against liability arising out of use of the rental tractor. The liability limits found in the agreement included $100,000 per person where a Hertz tractor was involved.[2] The agreement further stated:
Lessor warrants that, to the extent permitted by law, the coverage of the rented truck or tractor is primary as respects any other insurance available to customer or any other authorized operator ... Customer shall indemnify and hold harmless lessor ... from and against all loss, liability, and expense in excess of the limits of liability provided for in this paragraph .... (emphasis supplied)
The agreement also required Carpet Transport to warrant that any trailer or other equipment it utilized in conjunction with the Hertz rental tractor would be maintained in good operating condition and in compliance with all applicable local safety laws and regulations. This particular provision required Carpet Transport to indemnify Hertz for any loss resulting from Carpet Transport’s failure to comply with its terms.
Carpet Transport and Crabtree, on the other hand, were covered by an insurance policy issued by National Fire Insurance *983 Company. The policy’s limit was $500,000. This policy provided coverage for Carpet Transport and any other authorized operator of a “covered auto.” The term “auto” was defined by the policy as “a land motor vehicle, trailer, or semi-trailer designed for travel on public roads.” This policy contained an “other insurance” provision which stated, in pertinent part:
1. This policy’s liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and pursuant to operating rights granted to you by a public authority. This policy’s liability coverage is [sic] excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker. However, while a covered auto which is a trailer is connected to a power unit, this policy’s liability coverage:
(a) Is on the same basis, primary or excess, as for the power unit which is a covered auto....
* * * ⅝ * sfe
4. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis, (emphasis in original)
The trial court based its orders prorating liability for the settlement on Hartford Accident & Indemnity Co., Inc. v. Liberty Mutual Insurance Co., Inc., 277 So.2d 775 (Fla.1973). The similarity between the facts and issues in this case, and those in Hartford, is striking. However, as will be discussed, we find one fundamental and controlling distinction.
In Hartford, a tractor owned by Ryder Truck Rental, Inc., and insured by Liberty Mutual Insurance Company was leased to Elberta Crate Company. The tractor was used.to pull a trailer owned by Elberta and insured by Hartford. Subsequently, an accident occurred while the tractor-trailer was being driven by an authorized employee of Elberta. The issue in Hartford, as here, was the proration of liability between insurance carriers.[3] Since both of the insurance policies involved in Hartford provided coverage for use of a tractor or trailer, while at the same time making the insurance provided “excess” over any other valid insurance on the covered vehicles, the Florida Supreme Court was presented with the question of which, if either, of the insurance carriers involved was entitled to be considered an “excess” insurer, with no liability until the limits of the other insurance company’s policy was reached.
From the foregoing, the similarities between Hartford and this case are apparent. The crucial distinction is that here, the truck rental agreement did not have an “excess” insurance clause. On the contrary, it specifically stated that it was to be considered the primary source of coverage over the Hertz tractor without regard to “any other insurance available to [Carpet Transport, Inc.] or [Crabtree].” Moreover, it required its customers to hold harmless and indemnify Hertz against any loss in excess of the agreement’s coverage limits — here, $100,000. Hence, we are not faced with the same impasse created by mirror image “primary” and “excess” insurance provisions as confronted the court in Hartford. Rather, we interpret the previously-noted provisions of the Hertz truck rental agreement as manifesting a clear and unambiguous intent on Hertz’s part to contractually provide Carpet Transport and Crabtree with primary insurance coverage of $100,000. Cf. Hertz Corp. v. Pugh, 354 So.2d 966, 969 (Fla. 1st DCA 1978) (clear and unambiguous provisions in insurance contract should be given their natural meaning). Moreover, once the requirements of Florida’s financial responsibility law regarding liability insurance coverage were met, Sections 324.021(7) and 627.736, *984 Florida Statutes (1983), Hertz and Carpet Transport were free to contract between themselves as to any additional responsibility. Insurance Company of North America v. Avis Rent-A-Car, 348 So.2d 1149 (Fla.1977); Reliance Insurance Co. v. Maryland Casualty Co., 453 So.2d 854, 856 (Fla. 4th DCA 1984); Sentry Indemnity Co. v. Hartford Accident & Insurance Co., 425 So.2d 652, 654 (Fla. 5th DCA 1983); Patton v. Lindo’s Rent-A-Car, Inc., 415 So.2d 43, 45 (Fla. 2d DCA 1982). The rule we adopt in this case is that, absent a Hartford -type impasse, insuring agreements made by an owner-lessor and self-insurer such as Hertz with respect to its primary liability, vis-a-vis other insurance available to the lessee, will be enforced in accordance with the intention of the parties as clearly expressed in the contract between lessor and lessee. Hertz Corp. v. Pugh, supra.
Accordingly, the orders appealed from are REVERSED, and this case is remanded to the trial court for entry of a final order requiring Hertz to pay $100,000 of the settlement and Carpet Transport, Inc. and Crabtree, through their insurer, to pay $50,000.
REVERSED and REMANDED with directions.
ZEHMER and BARFIELD, JJ., concur.

. This ruling has not been appealed by any of the party-defendants below, and therefore is not before us for decision.

. The rental agreement provides in relevant part:
5. LIABILITY COVERAGE
Lessor provides liability coverage for customer [Carpet Transport, Inc.] and any authorized operator [Crabtree] and no others, ... against liability arising from the use of a vehicle, with limits as follows: ...; IF A TRACTOR, $100,000 each person ... IF A TRAILER, NO COVERAGE.

. Although in the instant case Hertz is a self-insurer, for purposes of proration of the damages the insuring agreements contained in the truck rental agreement will be considered as placing Hertz in the same position as would be a separate insurance company issuing a policy containing the same insuring provisions.