ERVIN, Chief Judge.
This is an appeal from a final order of the Division of Retirement (Division), denying appellant’s request to establish her membership date in Florida’s Teachers’ Retirement System (TRS) as August 1960, rather than September 1964. We affirm.
From 1949 to 1959, appellant taught in the North Carolina public school system. In 1960, she became an employee of the Duval County School Board (School Board) and established membership in TRS pursuant to the provisions of Chapter 238, Florida Statutes. She worked continuously for the School Board and made all required *340 contributions to TRS until June 1964. In June 1964, the School Board granted appellant maternity leave for the period of July 1, 1964 through July 1, 1965, to allow her to adopt a child.
On July 16, 1964, appellant applied to withdraw her accumulated contributions from TRS. Appellant testified during the hearing below that when she completed the withdrawal application at the School Board, she thought that she could repay the contributions, plus interest, before retirement in order to reestablish her membership date as August 1960. She did not identify anyone as having given her that information, however. Appellant stated she neither inquired nor was told by a School Board or Division employee of the effect of withdrawing her contributions on a later purchase of out-of-state service. After she signed the withdrawal application, a School Board employee stamped the application with a certification stating that as of June 30, 1964, appellant “is no longer employed by the public schools of Duval County”. In August 1964, the State of Florida issued a warrant to appellant for the total amount of her accumulated contributions.
From June 1964 until September 1964, appellant worked as a part-time instructor at Florida Junior College (FJC). After failing to adopt a child, appellant ended her maternity leave and the School Board rehired her as a full-time teacher, effective September 1964. The Division re-enrolled appellant in TRS and she has made all required contributions since September 1964, even during a second maternity leave. In 1983, appellant fully repaid contributions previously withdrawn from TRS, plus interest.
This matter arose in early 1983 when appellant asked the Division about her retirement account. By agency action in the form of a letter, the Division advised appellant that her withdrawal of accumulated contributions in June 1964 cancelled her membership in TRS, and that by returning to a full-time position, she established a new membership date of September 1964. The membership date is crucial to appellant’s position since it determines the amount she must pay into TRS to receive credit for her North Carolina service. Specifically, with a membership date before October 1, 1963, appellant could buy such credit for approximately $6,000. With a membership date on or after October 1, 1963, that same credit costs appellant approximately $79,000. See Section 238.06(4), Florida Statutes.
Appellant disputed the Division’s action and requested a formal hearing pursuant to Section 120.57(1), Florida Statutes. At the final hearing, Ruth Sansom, chief of the Division’s Bureau of Retirement Calculations, testified that under a long-standing practice pursuant to Section 238.05(4), the Division permits only full-time employees to establish or reestablish TRS membership. Therefore, Sansom opined that appellant’s part-time employment at FJC during the summer of 1964 did not qualify appellant for TRS membership. The Division’s final order concluded that when appellant withdrew her accumulated contributions, her TRS membership ceased, and that appellant’s part-time job did not bridge the gap between the date her membership ceased and the date she again taught full-time.
Analysis of the relevant statutory provisions compels our agreement with the final order’s conclusions. Section 238.05(3), Florida Statutes, provides in pertinent part:
[Membership of any person in the retirement system shall cease * * * upon the withdrawal by a member of his accumulated contributions as provided in s. 238.-07(13), * * * provided that the adjustments prescribed below are to be made * * * for persons who are granted leaves of absence. Any member of the retirement system * * * who has been or is granted leave of absence, shall be permitted to elect to continue his membership in the Teachers’ Retirement System and membership service shall be allowed for the period covered * * * by leave of absence under the following conditions: (a) A person who has been granted leave of absence shall file with the division *341 before his next contribution is due an application to continue his membership during the period covered by his leave of absence, and if such application is filed, shall make his contribution to the retirement system on the basis of his last previous annual salary as a teacher, and shall, prior to retirement, pay in full to the system such contributions with accumulated regular interest * * *.
Section 238.05(4) provides:
The division may in its discretion deny the right to become members to any class of teachers who are serving on a temporary or any other than a per an-num basis, and it may also in its discretion make optional with members in any such class their individual entrance into membership.
The unrebutted testimony in the record reflects that the Division has interpreted the above provisions to mean that when a TRS member withdraws her accumulated contributions, membership in TRS ceases. A member can avoid that result only by following the procedures found in Section 238.05(3)(a)-{c). Also, pursuant to Section 238.05(4), the Division has denied the right to establish or reestablish membership in TRS to teachers serving on a temporary or part-time basis. These longstanding statutory interpretations made by the officials charged with administering these statutes are entitled to great weight. Austin v. Austin, 350 So.2d 102, 104 (Fla. 1st DCA 1977).
Appellant first argues that the School Board or the Division had an affirmative duty to inform her of the right to elect continued membership and the consequences of a withdrawal of accumulated contributions. Section 238.05(3) contains no such affirmative duty. Appellant next argues that the Division should be equitably estopped from setting her membership date as September 1964. In Florida, equitable estoppel consists of four elements: (1) a representation by the party estopped to the party claiming the estoppel as to some material fact; (2) which representation is contrary to the condition of affairs later asserted by the estopped party; (3) a reliance upon the representation by the party claiming the estoppel; and (4) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon. Travelers Indemnity Co. v. Swanson, 662 F.2d 1098 (5th Cir.1981). In the instant case, appellant contends that the representation was the certification by the School Board that appellant’s employment terminated as of June 30, 1964, notwithstanding its knowledge that she had been granted maternity leave. That representation was not made to or relied upon by appellant, the party claiming estoppel, but rather to the Division, the party sought to be estopped. Appellant has failed to prove two elements of equitable estoppel. Therefore even if the School Board’s certification was a material misrepresentation, appellant has not shown that equitable estoppel should be applied.
Appellant’s final argument is that her part-time teaching job at FJC continued her TRS membership during the summer of 1964. As mentioned above, pursuant to Section 238.05(4) and Division practice, temporary or part-time employment does not qualify a teacher for TRS membership. Moreover, appellant’s membership ended when she applied for and received her accumulated contributions in the summer of 1964, without filing an application, and with it, her contribution to the retirement system on the basis of her last previous annual salary as a teacher, as required by the provisions of Section 238.05(3)(a), to continue her membership during her maternity leave. Thus, appellant’s membership in TRS ended in the summer of 1964 and her work at FJC did not reestablish her membership. Appellant claims that the Division inconsistently failed to change her membership date after her second maternity leave. The two maternity leaves are distinguishable, however, since appellant withdrew her accumulated contributions during only the first maternity leave.
*342 In summary, appellant reestablished her TRS membership when she resumed her full-time teaching duties for the School Board in September 1964. The Division has properly held that a September 1964 membership date must be used in determining the cost of out-of-state credit.
AFFIRMED.
MILLS and ZEHMER, JJ., concur.